Good morning. Carolyn Phillips appearing on behalf of the petitioner-appellant Frank Trudeau. This case obviously involves a request by a prisoner for equitable tolling of the AEDPA. And most recently, as this Court well knows, the Supreme Court in Holland v. Florida determined that equitable tolling principles applied to AEDP cases. Right. No dispute about that. They say your fellow, all his reasons really didn't cause him to miss the deadline. That I understand. Respectfully, we disagree. First of all, in terms of the factual basis of the district court's decision, which found that Mr. Trudeau was not diligent, I think it should be noted that while an inmate is required to be duly diligent, that diligence is reasonable diligence. It doesn't require an inmate to go to do something that I would be considered fruitless in his efforts. What we have here is a situation where Mr. Trudeau, during these lockdown periods, there were different classifications of inmates who had access to the law library. There was priority library users, there was inmates who had a 30-day time limitations for their legal papers to be filed, and then general library users. Now, Mr. Trudeau has submitted a declaration that indicated for a period of October of 2000 through May of 2001, there were ongoing periods of lockdowns having to do with racial riots. The district court determined that those periods of lockdown were only intermittent. Mr. Trudeau, however, in his declaration has insisted that they were continuous. Is it your position that the prison was locked down from October 26, 2000, through May 31, 2001? Yes. The records before the court did not reflect that. This is what I was going to note. There was an intermediate lockdown, but not a continuous one. Is that correct? Actually, what those records reflect are the prison's requirement to set forth the housing program while under lockdown. And I would like to point out in excerpts of record, I think it's 113, there's a memo dated March 12, 2001. And this is a typical memo that was written by Facility B where Mr. Trudeau was housed. What page is that? I'm sorry, 119. Okay. Now, this programming memo has to do with a race riot that actually occurred February 17, 2001. This is an ongoing lockdown with specific requirements that inmates remain segregated, especially being transferred from their housing unit to the law library. I understand that he used the law library, I think, in April of 2001, some date. Right. But is there any evidence in the record that he ever attempted to use the law library before that date? Because the law library, the prison officials have indicated that it was available, not all the time, but it was available for requests to be made. That's exactly correct. And that's where the PLU status comes in and is so important. In order for Mr. Trudeau to have PLU status, he would have had to show the prison officials that he had a 30-day deadline. And I believe in the record it indicates a declaration from the prison law librarian that the inmate has to produce documentation that indicates what the deadline is going to be for the next legal action on a case. Mr. Trudeau, his counsel, when you have to go back, his appellant counsel submitted to him a letter indicating that he had his cert petition to the U.S. Supreme Court had been denied. However, Mr. Trudeau did not receive a copy of that denial itself from the court. So what we have is Mr. Trudeau is left without any documentation regarding this time limitation, which he needed in order to obtain PLU status. He did get notice of it about a month later, didn't he? From his lawyer, but he did not receive either. Okay, when he got the notice, he still had another 300 days to go, didn't he? What he received was notice that the United States Supreme Court had denied his cert petition. He did not receive the actual denial from the United States Supreme Court. So what? I mean, if he had knowledge that the cert was denied on a certain day, that's what starts the clock running. Actually, he didn't know what date that his cert petition was denied. But what I'm saying is critical here is the fact that he needed the documentation from the court. The prison required documentation from the court that would allow him to have PLU status. Well, yeah, but Exhibit, I think, is 34 from the law librarian. It indicates that the law was open a number of days between October and April of 01. And you didn't have to have any – I mean, you just had to make a request. It wasn't any 30-day requirement. Well, but what I'm saying is in these periods of lockdown, the priority was given to those inmates who held the ducats that – True, but that wasn't exclusive. And he never even applied to use the library during that entire period of time from October of 2000 through, what, April of 01. April 14th of 01. Okay. And he sat on his duff during that period of time. No, actually, he asked his mother to send him legal documentation that he could not himself access. What we have is a situation where he was unable to prove that he had a filing deadline. What isn't explained in these charts that says, oh, the library is open, it doesn't explain what the restrictions were. It doesn't explain that the priority – how many inmates actually held the PLU ducats. The point is he never really even made application to see if he could use it. In other words, he never made an effort to see – if he made the effort and they turned him down, you'd be home free. But he never made the effort in – number one, you know. And this is where it's important in terms of reasonable diligence. Mr. Trudeau knew that his efforts, if he asked to go to the law library, and he knew he was not going to be able to go to the law library because he didn't hold a PLU ducat, what was the point of asking to go to the law library? Then what he's – then his efforts, basically, he's doing something that's not going to result – give him the result he wants. So either he's – his due diligence requires him to just ask, even though he knows he's not going to receive the permission to go to the law library, or he goes when he knows he can go, which is what happened here. He went in April 14th. I want to make sure I understand. He never got anything from the Supreme Court, per se, telling him the date cert was denied. What he got instead was a letter from his lawyer telling him on such and such a day the court denied cert. At some point, he got that. He knew at some point. What he – he was never advised at the date that his cert petition was denied. Ever? I thought he at some point found out what the date was. No. His lawyer on May 16th, 2000, sent him a letter advising him that his cert petition had been denied. Well, what else does he need? He knows it's – he knows that clock's going to start running from that day if it's denied. And in addition to that, the attorney advised him that the attorney would be preparing the petition for Mr. Trudeau. For a – for a – for a Federal petition? For – for a Federal petition or any petition. What – He said he wouldn't file a State petition, didn't he? I believe that he – yes, he did say he wouldn't file a State petition, but basically he had promised to file a Federal petition for Mr. – for Mr. Trudeau. And then in August, I believe it was August 4th, 2000, Mr. Trudeau was notified by his lawyer that he was not going to be filing a petition. Again, I just want to make sure I understand what your argument is. Is your argument that because he didn't get anything from the Supreme Court, he couldn't get permission to use the law library because the lawyer's letter wasn't adequate? Or are you saying because he didn't get anything from the Supreme Court, he didn't know the date that the time began to run? I'm saying actually both of those things. I mean, there's a combination of factors here. What in the record shows that he couldn't get to use the law library because he didn't have a piece of paper from the Supreme Court? Actually, it's the declaration from the law librarian, John Flaherty, at 33 of the excerpts of record, and I believe it's paragraph 4. It indicates – maybe even earlier, I'm having trouble reading this – but it indicates that there has to be a supplied proper court documentation, such as a denial of review from the California Supreme Court, which is something he did not have. He didn't have that documentation. And the letter from the lawyer wouldn't suffice? I mean, I don't understand that to be what he's saying. Well, obviously, there is no indication from the prison in terms of policy that they would have accepted anything other than the – That's what I'm getting at. Right. There's nothing in the record to show that. But he never tried in the first place to see whether he could use a library. He never made the effort. Well, he did – Was that due diligence when he never even gave it a college try? And respectfully, Your Honor, we are asking the Court to make a conclusion that inmates are not required to go beyond reasonable diligence. I see your timing. And take a fruitless act. Thank you. Thank you. Good morning. May it please the Court. My name is Laura Simpton. I'm here on behalf of Respondent Thawarden. Would you pick the microphone up a little closer to your mouth? Thanks. Is this better? Yeah. Thanks. Could you clear up something for me, please? Was the prison on continuous lockdown October 2000 through May of 2001? What's your position regarding your friend across the aisle's position? We do disagree. We're not open for business. Forget about it. We do disagree on that point. The exhibits that were produced in response to the subpoena that was issued for all lockdown materials between November 2000 and May of 2001 produced the documents that indicate that there was only a period of lockdown for 43 days out of 170. But this interpretation is being challenged by Ms. Jones. For instance, the one she pointed to was the one on page 119, right? That's the memo. Facility lockdown. And as I understand your interpretation, because the subject heading is Facility B Lockdown, plan of operation from March 12th to March 18th, means that it's only lockdown from March 12th to March 18th. Isn't that your position? That is the position. That doesn't make any sense, and these records seem to be incomplete because, by definition, this is just a plan of operation for that week. And this pertains to a lockdown that started on Saturday. It says on Saturday, February 17th, at approximately 955 hours, a disturbance occurred leading to a lockdown on February 17th. So, presumably, they didn't wait until March 12th for a lockdown for a disturbance that happened on February 17th, did they? That doesn't make any sense. Well, I do know that in response to this. Well, answer my question. That doesn't make any sense to say the lockdown from the February 17th interracial disturbance didn't start until March 12th, does it? I don't know exactly what happens. I don't know if there is a delay. Well, we don't know because there are no records for that period, from February 17th to March 12th. Perhaps there's a delay between when the riot occurs and when there's a change in the prison's policy. I do know that in response to the subpoena for every document having to do with the library lockdown between those dates of November 2008. All that shows me is, you know, the record-keeping system at the prison, like everything else at the Department of Corrections, is broken down, right? You don't have all the records. Well, it appears that the prison was required to produce the documents in response to the subpoena. Whatever they had. This is what was produced. And there are a lot of gaps. What I'm saying, there are a lot of gaps in the record. From my perspective, it appears that those were the only dates that there were a lockdown. But even if we assume that there was a lockdown this continuous period of time. You don't have to assume it. We have his testimony. It's important to note that the petitioner was never denied access to the law library during that period of time. I want to get this thing clear about whether there was or was not a continuous lockdown. Do you still contend that the evidence supports your position that there were only these very few short, intermittent lockdowns? I do. I do. And so what should we do with these gaps in the record and with the petitioner's testimony that there was a continuous lockdown? We just ignore those? Well, I believe that even if we assume. My personal view is that this is what occurred. But even if we assume that there was a continuous lockdown, that still didn't proximately result in the untimely filing in this case. Those lockdowns, first of all, only concerned the last six months of the statute of limitations. He still had the first six months where he could, if he had been diligent, he could have pursued his rights at that point in time. Well, the first month or two, he didn't even know the date that the clock started running. Right. That whittles away part of the first six months. If I could maybe give just a brief chronology, that might help to put it in context. The U.S. Supreme Court denied review April 17th. He didn't know that. Right. He did not know about it. Within a month of that action by the Supreme Court, his attorney notified him, sent him a letter, indicating that there had been this denial and that the defendant needed to pursue, file his federal habeas petition, and he offered that he would draft a petition for a petitioner to submit. So right off the bat, we've got a month down. So there's 11 months still remaining on the clock, yes. And then the lawyer, he asks his lawyer to send him some briefs. Right. The lawyer sends him the wrong set of different clients' briefs. By petitioner's own acknowledgment, he had the complete transcript. And again, he only requested the transcripts, not the case file. So presumably he still had the documents that were filed on the direct appeal and in the petition for review and the cert and any documents he received during the trip. How much time had transpired before he got his transcripts? He admits that he received the transcripts by November — pardon me, by September 7th. So that's another — Meaning for a month and a half before the lockdowns commenced, he had his transcripts. He had been twice expressly notified by his counsel that counsel would not be pursuing a state habeas petition. He needed to do that himself. And he also had the form for the state habeas petition that had been graciously supplied to him by his attorney. Okay. Let's finish the timeline. So he gets his transcripts, and at some point after he gets his transcripts, there's a lockdown with the prison. Yes. A lockdown with the library. A month and a half later. A month and a half later. And then he asks his mother, I can't get to the library. Can you send me what I need? His mother sends him the stuff, and the prison sends it back. Exactly. Before it being excessively pre-printed legal materials. And so you kind of have all this constellation of things happening to this guy, and he misses the deadline by seven days. Most importantly, we have no information in there that he ever sought to go to the law library and was denied access. He claims that he would not have been received graciously. Such a request would have been futile. What's wrong with that position? That it would have been futile? For him to request, why request when you know you're not going to get? Well, I believe that his own declaration indicates he wasn't aware exactly of the standards for obtaining review. At one point he indicated he wasn't aware he could qualify for the PLU status, that he believed he was the GLU status. Was he made aware of that access? I don't know. I'm sorry. Could you repeat that, please? Was he made aware of how to obtain access if he wanted to use the library? I don't know. I assume that he could go visit his law librarian and obtain access that way. Is there anything in the record that he was made aware that even during the lockdown he could access the library? Well, these are the prison regulations and the prison rules, and if he wanted to enter the law library, the prison library, he would have – he could have attempted. But we don't have any information that he was ever – that he ever attempted and was denied. And the very first time he appeared for the law library, he was granted access, and that was just days before the expiration of his timeline, his one-year period. Let me ask you something. Looking at this thing not individually, no individual aspect of which would show gross hurdle or deficiency on his part, but looking at the whole picture, could we say that the big picture here should be individually it's not such a big deal, but the sum is greater than the individual parts when they put them together, you know, because he had one roadblock after another. Why would it be inappropriate for us to rule in that manner? I disagree that any of these circumstances even combined were the proximate causation of him not being able to – Well, just a minute. Let me ask a different question. I don't know if equitable tolling is a proximate causation analysis. Isn't the case to say, for instance, we'll say his late notice of the, you know, we'll say they took a month and a half, right? So don't you just add the month and a half to the end of the period? No. You know what tolling is? You toll the period so it doesn't count? I – You don't have to show, you know, make a proximate causation showing, do you? So if you add that month and a half, he's going to qualify. He's only seven days short. Well, I disagree strongly with the idea that there is a stop clock mechanism. The Supreme Court – How does equitable tolling work? Well, the Supreme Court's legal standard for granting habeas or for granting equitable tolling under Holland, which is consistent with the prior precedent including from this court, indicates not only must there be reasonable diligence but also, and this is a quote, that there was some extraordinary circumstance stood in the way that prevented the timely filing. I know that. That only goes to, though, whether you're entitled to equitable tolling. It doesn't tell you how you count the days. You know, tolling means to toll, right? Well, he cannot be – he cannot receive tolling if he's not entitled to it. We don't need to get to the calculations. Well, he's entitled to it, you know, if he never knew the petition for cert was denied. He had 11 months – Why isn't he responsible for that? He had 11 months remaining to ascertain that he had – Oh, not 11 months. I'm just talking about the month, the month and a half for which he didn't have notice. Why don't we just add that to the end? That's what you do with tolling of statute. Every single petitioner will be in the same predicament as this petitioner where they do not automatically receive an email notification of a court's ruling. If we were to provide that, then we would – That's true if they don't receive it. He was notified within 30 days of that ruling, and he had ongoing communications with his attorney. He could have readily asked his attorney for the specific date. So what are you saying? For him, 11 months is enough? I think that – Everybody else gets 12 months, but he gets 11. That's enough for him? The statute contemplates that within 12 months, the petitioner will be able to assemble his documents, complete his research, draft his opinion. That's exactly right. He should get 12 months. And he – And so if he loses a month, you should add it on to the end. That would then completely undermine the purpose of the one-year statute of limitation. Every single petitioner – Well, by definition, that's what tolling does, undermine the statute. In every case you apply tolling, it undermines the statute, doesn't it?  That's one way to put it, I suppose. Well, it's to be reserved for only unusual cases. To adopt that approach would effectively alter the statute of limitation for every single petitioner because every single petitioner does not immediately obtain their transcripts from their appellate attorney. They don't immediately receive notification from the court. They're not on an Internet notification the way us attorneys are. If we were to adopt that approach, every single petitioner would automatically receive this equitable tolling. The statute contemplates one year. One year is a long time. We can't – one year isn't for the petitioner to spend every single day drafting his petition. That one year contemplates that he will have enough time to do all these different things that he needs to do in order to file his petition. And I maintain in this particular case, I see that my time has run out. Yes, it is. Thank you very much. And you used up your time already, Ms. Phillips, so the case just argued is submitted. Thank you both. Thank you.
judges: Cowen, Tashima, Silverman